**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **EDWARD MONROE, et al.,** | : | **CIVIL ACTION** |
| **Plaintiffs,** | : | **NO. 05-04937** |
| | : | |
| **v.** | : | |
| | : | |
| **JEFFREY A. BEARD, et al.,** | : | |
| **Defendants.** | : | |

**MEMORANDUM AND ORDER**

Stengel, J.                                                        March 7, 2007

Plaintiffs, who are current or former inmates of the State Correctional Institution at

Graterford, Pennsylvania brought this suit alleging violations of their federal

constitutional rights when defendants searched their cells and seized documents on

August 4, 2005.  Defendants have moved to dismiss plaintiffs' lawsuit in its entirety.  For

the reasons discussed below, I will grant defendants' motion with the exception of

plaintiffs' Fourteenth Amendment Due Process and First Amendment claims.

**I.      BACKGROUND[1]**

Edward Monroe, Davon Collins, Alexander Davis, Maurice Everett, Robert

Royster, Gregory Stover, Richard Johnson, Lawrence Belser, Anthony Dickerson,

Howard Gibson, Charles Poulson, Sylvester Perry, Sean Williams, Wendell Green, and

Salim Hickman (collectively "plaintiffs") are current or former inmates at the State

---

[1] For the purposes of this motion, all facts are taken from the plaintiff's second amended complaint and are accepted as true.

Correctional Institute at Graterford, Pennsylvania ("SCI-Graterford").  Plaintiffs allege

that on August 4, 2005, corrections officers searched their cells and seized documents.

Prison officials conducted the searches in the following manner: officers entered the cells,

strip searched plaintiffs inside the cells, ordered plaintiffs to re-dress, then handcuffed

them and had them stand outside the cells while the officers searched the cells.

Defendants did not give plaintiffs a pre-deprivation hearing or notice before taking

their property.  Second Am. Compl. ¶ 17.  On August 10, 2005, plaintiffs received a

memorandum from Deputy Superintendent Lorenzo that stated that the reason for the

search and seizure was to retrieve documents associated with the Uniform Commercial

Code.  Defs' Am. Mot. Dismiss p. 4.  The memo stated that the Internal Security

Department believed that some inmates, including the plaintiffs, were using the UCC to

file fraudulent liens against Department of Corrections staff.  Id.  Therefore, the prison

had confiscated publications and forms used to prepare and file fraudulent liens because

these materials were contraband.  Id.  The memorandum instructed inmates that "[a]ll

property pertaining to this investigation will remain in the custody of the Internal Security

Department pending review and disposition of the investigation.  In the interim if any

legal documents that were unwittingly confiscated and are not related to the UCC

investigation will be returned to you."  Inmates could object to the search and seizure by

using the provided form and the Department's Chief Counsel would review the

objections.  Id.

-2-

Plaintiffs were not able to exhaust the grievance procedure because of defendants' actions.  Second Am. Compl. ¶ 10.[2]  In response to their initial grievances, defendants used the same language from Lorenzo's August 10th memorandum and ignored "the specific queries, concerns, and injuries in each grievance."  Id. ¶ 13.  Defendants did not respond to some of plaintiffs' initial grievances; other plaintiffs were directed to use a specific form called an "Unacceptable Correspondence" form in lieu of the grievance form to address their concerns.  Id.  Several plaintiffs did use this other form and still have not received an answer.  Id. ¶ 14.  Defendants did not respond to all grievances[3] and therefore plaintiffs were deprived of a post-deprivation remedy for their property losses.  Id. ¶¶ 15, 18.  Plaintiffs also challenge the validity of the "Unacceptable Correspondence" forms and contend that this process permitted defendants to ignore the grievances filed by plaintiffs in accordance with the grievance procedure DC-ADM 804.  Id. ¶ 19.

Plaintiffs filed suit against the following defendants, who are all employees of the Department of Corrections ("DOC").  Jeffrey Beard is the Secretary of Corrections and initiated and approved the searches and seizures.  Michael Lorenzo is the Deputy Superintendent for Security and approved and orchestrated the searches and seizures.  Thomas Dohman is the Security Captain and took part in the searches and seizures.  John Moyer is a lieutenant at SCI-Graterford and took part in the searches and seizures.

---

[2] Plaintiffs also allege that the grievance procedure does not apply to this case because there is a contract between plaintiffs and the defendants.  Second Am. Compl. ¶ 11.

[3] Plaintiffs do not specific which individuals received responses to their grievances.

Defendants Radle, Knauer, Owens, and Grunder were lieutenants in the Graterford

Security Office and approved, aided and abetted the searches and seizures.  The following

defendants approved and permitted the searches and seizures: Donald Vaugh, Regional

Deputy Secretary; David DiGuglielmo, Graterford Superintendent; John Murray,

Graterford Deputy Superintendent of Operations; Thomas Buzzar, Major at Graterford;

Francis Field, Major at Graterford.  Housing Unit Managers Jeffrey Baker, Sylvia Pallot,

Sharon Luquis, and Eric Jones also approved and allowed the searches and seizures.

Defendants also include: Executive Deputy Secretary Shaffer, Scott Pasquale, Corrections

Officer ("CO") Hariston, Lieutenant Scott Bowman, CO J.r. Andalora, Sergeant Vojacek,

CO Strong, Co N. Hall, CO N. Hollis, Sergeant Hale, CO Reese, CO Short, CO A.

Campbell, CO LeBlanc, Lieutenant A. Flaims, CO McMichael, CO D.M. Weaver,

Lieutenant Lapinski, CO Stokes, Co Ulkowski, and unknown accomplices.  Plaintiffs also

filed suit against three individuals who did not participate in the search:[4] Chief Librarian

Linda Miller, Mailroom Supervisor Kim Ulisny, and Misconduct Hearing Examiner Mary

Canino.

     **A.    Allegations of Individual Plaintiffs**

       **(1)    Davon Collins**

---

[4] Defendants move the court to dismiss these defendants because plaintiffs do not allege that they participated in the serach.  According to plaintiffs, Miller curtailed plaintiffs' access to the law library and gathered intelligence that the prison used in deciding who to raid; Ulisny tampered with plaintiffs' mail and gathered intelligence that the prison used in deciding who to raid, Canino participated in misconduct proceedings against plaintiffs Collins, Dickerson, and Monroe and was not a fair and impartial arbiter.  Since plaintiffs Fourteenth Amendment Due Process and First Amendment claims survive the motion to dismiss, it is premature to dismiss these plaintiffs even though they did not participate in the actual search.

C/O Derrick Hairston and an unknown accomplice searched his cell, conducted a strip search and body cavity search, and removed legal material from his cell.  Second Am. Compl.  Collins is the only plaintiff to state that an officer inserted a finger in his rectum during the strip search.  Second Am. Compl. Affidavit In Support of Complaint Regarding Davon Collins.  Collins alleges that the following items are missing and unaccounted for after the search: trial transcripts, note of testimony, trial discovery from Monroe County case 1205-CR-2000; letters from a deceased attorney explaining his ineffectiveness and the optimum way for Collins to address this on appeal and providing caselaw for Collins' PCRA petition; Affidavits of Truth from various witnesses; original § 2241 Habeas Corpus petition and exhibits; original P.C.R.A. petition ready for filing; copies of filed motions and orders; original social security card; Black's Law Dictionary, The Law of Mortgages, Redemption; The Banker's Handbook; Exhuming of a Nation. Collin's Listing of Missing Items, Nov. 10, 2006.

Collins filed a grievance on August 5, 2005 and received a response from Michael Lorenzo on August 16, 2005, which repeated the information in the August 10th memorandum.  Second Am. Compl. Affidavit In Support of Complaint Regarding Davon Collins.  Collins filed an appeal on August 16, 2005 and has not received a response.  Id.

Several legal actions Collins pursued were dismissed or otherwise lost because defendants confiscated the legal research and materials Collins needed to pursue these actions.  Second Am. Compl. Affidavit In Support of Complaint Regarding Davon

Collins.  Theses actions include:[5] (1) dismissal of U.S.D.C. E.D. Pa. No. 05-cv-020[6] on

July 5, 2005 and Collins was unable to appeal the order; (2) dismissal of U.S.D.C. E.D.

Pa. No. 05-cv-5263[7] on October 11, 2005 and Collins was unable to appeal the order; (3)

dismissal of U.S.D.C. E.D. No. 05-cv-4128[8] and Collins was unable to appeal the order;

(4) while still pending, Pa. Superior Court case No. 3119 EDA 2005[9] is in danger of

being lost because the court refuses to provide Collins with a reproduced record; (5) and

(6) dismissal of Collins' motion to vacate and motion to withdraw plea in Monroe County

C.C.P. No. 1205-CR 2000,[10] which Collins was unable to appeal; (7) disappearance of

U.S.D.C. M.D. Pa. No. 05-0922[11]; (8) freezing of Montgomery County C.C.P. No. 03-

12036,[12] which has been inactive since June 2005 because Collins has been stripped of

---

[5]  See Appendix III to Defs' Am. Mot. Dismiss for court records from all the cases referenced by Collins.

[6]  Collins may have submitted the wrong case number for this case.  Judge Joyner dismissed civil action No. 05-020 as frivolous pursuant to 28 U.S.C. § 1915(e) on July 5, 2006.  Order (Doc. No. 9).

[7]  Judge Giles dismissed this case without prejudice as frivolous on October 11, 2005.  Order (Doc. No. 3).

[8]  Judge Joyner dismissed this case without prejudice as frivolous on June 21, 2005.  Order (Doc. No. 7).

[9]  The court docket entries show that the court denied Collins' motion for return of legal materials because he did not file a brief.

[10]  A review of the docket entries for this case show that Collins' motions were frivolous.  He filed several motions to vacate, which the court denied because they were either incomprehensible or made frivolous arguments such as Collins was not a member of the Commonwealth of Pennsylvania and therefore the court lacked subject matter jurisdiction over him.  The court also denied Collins' motion for withdrawal of plea because Collins did not enter a guilty plea; a jury found him guilty after a trial.

[11]  This case did not "disappear."  It was closed and transferred to the Eastern District of Pennsylvania for jurisdictional reasons on July 5, 2005.  Order (Doc. No. 7).

[12]  Collins is a defendant in this civil suit seeking a declaratory judgment that Collins breached a loan agreement he entered into with the plaintiffs.

the evidence and research needed to go forward in this case; (9) judgment against Collins

in Monroe County C.C.P. No. 3692-CV-2006[13] that Collins was unable to defend himself

against; (10) dismissal of Pa. Supreme Court No. 31 MM 2006,[14] which Collins was

unable to appeal; (11) dismissal of Pa. Commonwealth Court No. 65 MD 2006[15], which

Collins was unable to appeal.

### (2)    Alexander Davis

Lieutenant Scott Bowman and CO J.R. Andalora searched his cell, conducted a

strip search and body cavity search, and removed legal material from his cell.  Second

Am. Compl.  Davis states that the following legal materials were taken from him:

"Petition/Motion to Dismiss Vacate Void Judgment;" criminal case folder No. CP-

110/0289; civil case folder No. CV-04-2859;[16] Davis' G.E.D., notice of sovereign status,

copyright notice, financing statement, durable power of attorney, hold-harmless and

indemnity agreement, private agreement, private collateral list, and security agreement.

Davis' Affidavit of Truth, Oct. 4, 2006.  Davis was preparing the Motion to Vacate Void

---

[13] Collins was also a defendant in this civil suit alleging that Collins breached a loan agreement.  The Court granted and affirmed summary judgment against Collins on April 5, 2002, three years before the August 2005 search and seizure.

[14] In this suit, Collins sued the Commonwealth of Pennsylvania for "wrongs" committed by Monroe County Common Pleas Court Judge Ronald Vican in dealing with a motion to void judgment.  Collins filed this suit on January 16, 2006, more than a year after the search.

[15] This case was transferred to Commonwealth Court in February 15, 2006 and dismissed one month later.

[16] After a jury trial, the court entered a civil judgment for and against Davis on January 5, 2007.  Order, Doc. No. 79.  Davis's received nominal damages in the amount of $1.  This case concerned violations of Davis' First and Fourteenth Amendment rights.  Mem. and Order Granting and Denying Summary Judgment.  Doc. No. 67.

Judgment to attack his conviction in the Philadelphia Court of Common Pleas by raising "the issue of lack of subject matter jurisdiction; that the charging instruments failed to describe the proper defendant in the court records, the court failed to disclose the true nature and cause of the action brought against the Affiant." Id.

### (3)   Maurice Everett

Sergeant Vojacek and CO Strong searched his cell, conducted a strip search and body cavity search, and removed legal material from his cell.  Second Am. Compl. Everett told the officers that the legal documents were for court litigation.  Everett's Affidavit of Truth ¶ 13, Oct. 6, 2006.   Everett provided a list of sixteen items that were not listed on prison's list of confiscated property including court and trial transcripts; two notarized affidavits from co-defendants being used as newly discovered evidence; habeas corpus petition for case No. 05-3864  filed in district court;[17] handwritten habeas corpus petition prepared for the first judicial district of Pennsylvania; case law and law journals on habeas corpus and subject matter jurisdiction; handwritten 1032(B) motion to void judgment for the first judicial District Court of Pennsylvania; handwritten 60(b) Motion to void judgment prepared for the Federal District Court; three yellow tablets of handwritten research notes on newly discovered evidence; petition to terminate guardianship, copy of filed and recorded UCC-1 financing statement; notarized security

---

[17] Everett filed a habeas corpus petition in this case on July 27, 2005.  Petition for Writ of Habeas Corpus, Doc. No. 1.  On May 18, 2006, Judge Clifford Scott Green dismissed this case without prejudice.  Order, Doc. No. 3.

agreement; legal books and dictionaries.  Everett's Itemized List of Legal

Materials/Private Property Confiscated, Nov. 14, 2006.

Everett filed a grievance concerning this illegal confiscation.  Everett's Affidavit

of Truth ¶¶ 17-21, Oct. 6, 2006.  David Diguglielimo did not respond to the grievance.

Id. ¶ 17.  Everett did receive the September 10, 2005 memorandum from Michael

Lorenzo but this response did not address his claims.  Id. ¶ 19.  Everett sent an appeal to

David Diguglielmo and received a record stating "[y]our claim to have appealed to the

Superintendent without response does not entitle you to direct appeal to final review.

Contact the Superintendent's Office to ensure they have received your appeal."  Id. ¶¶ 20-

21; Ex. D.  Everettt alleges that he made a good faith effort to exhaust the grievance

procedure.  Id. ¶ 22.

### (4)    Robert Royster

CO N. Hall and CO N. Hollis searched his cell, conducted a strip search and body

cavity search, and removed legal material from his cell.  Second Am. Compl.  The prison

removed legal materials Royster was using to defend himself in four pending court cases.

Royster's Affidavit and Dec'l of Truth, Oct. 2, 2006.  Royster filed a grievance

concerning the seizure of his legal materials.  Id.  David DiGuglielmo responded to and

upheld the grievance on September 6, 2006.  Id.  On November 10, 2005, Sharon Burks

denied Royster's appeal.  Id.

### (5)    Edward Monroe

Sergeant Vojacek and CO Strong searched his cell, conducted a strip search and body cavity search, and removed legal material from his cell.  Second Am. Compl. Defendants took the following legal materials from Monroe: legal documents, legal briefs, legal notes, legal books, research materials, memorandums of law, motions to void judgments, writs of habeas corpus, petition to cancel guardianship, and exhibits. Monroe's Affidavit of Truth in Support of Complaint, Oct. 11, 2006.  This material took Monroe eight years to construct and Monroe was unable to proceed in two active court actions because of the seizure.  Id.

### (6)   Gregory Stover

Sergeant Hale and Budzyk searched his cell, conducted a strip search and body cavity search, and removed legal material from his cell.  Second Am. Compl.  Stover states that the prison took all legal materials he had in his possession including legal briefs address to various courts, legal documents, legal research notes, exhibits, handwritten and typed writs of habeas corpus, legal books, and UCC materials.  Stover's Statement of Facts, Nov. 9, 2006.

### (7)   Richard Johnson

CO Reese and CO Short searched his cell, conducted a strip search and body cavity search, and removed legal material from his cell.  Second Am. Compl.  The confiscation slip Johnson received after the search is not an accurate description of the material taken from him.  Johnson's Affidavit and Notice of State Official(s)

Unconstitutional/Criminal Conduct ¶ 7, Nov. 14, 2006.

### (8)    Lawrence Belser

CO Campbell and LeBlanc searched his cell, conducted a strip search and body cavity search, and removed legal material from his cell.  Second Am. Compl.  Belser submitted a list of ten items that were taken in the search and never returned including a federal habeas corpus brief addressed to the federal district court; post conviction relief act petition addressed to the Philadelphia Court of Common Pleas; nine volumes of notes of testimony; completed 60(b) motion for federal district court and Philadelphia Court of Common Pleas; refusal for fraud motion, five yellow legal note tablets containing legal research of newly discovered evidence, case law copies of newly discovered evidence, newly discovered evidence affidavits, law journals and law dictionaries.  Belser's Response to Settlement Conference Order.

### (9)    Antony Dickerson

Lieutenant A. Flaims and CO McMichael searched his cell, conducted a strip search and body cavity search, and removed legal material from his cell.  Second Am. Compl.

### (10)    Howard Gibson

CO Reese and an Unknown Accomplice searched his cell, conducted a strip search and body cavity search, and removed legal material from his cell.  Second Am. Compl. Gibson received a confiscation receipt listing the following items as seized: five binder of

UCC related materials, book with UCC related material, various UCC documents, one issue of the American Bulletin.  Gibson's November 28, 2006 Statement of Claims ¶¶ 8-9.  Gibson states that this is inaccurate and does not include all legal materials that were seized.  Id.  The following items are still missing: habeas corpus petition; over one thousand pages of research notes that Stover purchased from Mr. Robert Hick's law center for $7,000; trial transcripts; durable power of attorney; 1032(B) motion for void judgment; case law and citations on subject matter jurisdiction and habeas filing; books including Black's Law Dictionary, False Imprisonment, Corrections and Prisoner's Rights, Our Broken Legal System, Writ of Habeas Corpus.  Gibson's Statement of Claims, Nov. 8, 2006 .  Gibson submitted a grievance to Superintendent David Diguglielmo on August 14, 2005; Mr. Diguglielmo never responded.  Gibson's November 28, 2006 Statement of Claims ¶¶ 13, 15.  Wendy Moyer dismissed his grievance because it was not submitted within fifteen working days after the event upon which the claims are based.  Id. ¶ 14.

### (11)   Charles Poulson

CO D.M. Weaver and an Unknown Accomplice searched his cell, conducted a strip search and body cavity search, and removed legal material from his cell.  Second Am. Compl.  After reviewing his confiscated property on September 27, 2006, Poulson composed a list of missing items including motion to void judgment; case law and

research for habeas corpus petition case No. 05-3372;[18] law journals and case law on

subject matter jurisdiction; court transcripts; composition books containing legal research

and handwritten habeas corpus petitions; freedom of information act booklet; books

including Banker's Handbook: Bible on Related UCC Transaction, Invisible Contracts;

The Authority of Law, Wills and Trust.  Poulson's Statement of Missing Items, Oct. 23,

2006.  The list the prison provided of his confiscated material was inaccurate.  Poulson's

Statement of Claim ¶¶ 9-10, Oct. 5, 2006.  Poulson filed a grievance and received a

response.  Id. at ¶ 18.

### (12)   Sylvester Perry

Lieutenant Lapinski and CO Stokes searched his cell, conducted a strip search and

body cavity search, and removed legal material from his cell.  Second Am. Compl.  The

guards read his personal mail and legal material and took legal materials including current

litigation paper for a "habeas corpus 60 motion" and a "1983 civil complaint;" research

notes; trial transcripts; and Black's Law Dictionary. Perry's Affidavit of Truth, Oct. 26,

2007.[19]

### (13)   Sean Williams

---

[18] Poulson filed a writ of habeas corpus on June 30, 2005.  Emergency Constitutional Writ of Habeas Corpus, Doc. No. 1.  On March 15, 2006, Judge Louis Pollak dismissed the petition without prejudice.  Doc. No. 10.

[19] At the settlement conference, Perry presented the court with a list of twenty-five confiscated items including trial transcripts; 60(b) motion litigation; summary judgment litigation; legal research notes; affidavits; UCC-1 financing statement form; power of attorney package; redemption manual; cracking the code manual; America's Bulletin newspapers, I.O.P. information and forms; security agreement; UCC information request forms; prison bills of exchange and books including Blacks Law Dictionary, Common Law Contracts, One Man Out Book, Bluebook of the SEA, Commercial Contracts, Book of Mortgages, UCC Connection, Reparation Process, Criminal Defendant's Bible, OHMA Book.

CO Ulkowski and an Unknown Accomplice searched his cell, conducted a strip search and body cavity search, and removed legal material from his cell.  Second Am. Compl.  Williams states that the following materials were not returned to him: legal research notes, Black's Law Dictionary, Redemption.  Letter from Williams to John Shellenberger, Sept. 24, 2006.

### (14)   Wendell Green

Unknown Accomplices searched his cell, conducted a strip search and body cavity search, and removed legal material from his cell.  Second Am. Compl.

### (15)   Salim Hickman

Unknown Accomplices searched his cell, conducted a strip search and body cavity search, and removed legal material from his cell.  Second Am. Compl.

### B.   Relevant Procedural History[20]

Plaintiffs filed their complaint on October 17, 2005.  On December 20, 2005, the court ordered the Clerk of Court to appoint counsel for the plaintiffs from the Prisoner Civil Rights Panel.  On January 4, 2006, the court stayed proceedings pending the appointment of counsel.  The attempts to appoint counsel were unsuccessful and the plaintiffs proceeded *pro se*.  Magistrate Judge Thomas Rueter held a settlement conference on September 8, 2006 at SCI Graterford.  The parties were unable to resolve

---

[20] As there are over one hundred docket entries, this section only focuses on the relevant procedural history. Plaintiffs have also submitted dozens of letters to the court complaining of the prison's continued mistreatment of them after the August 2005 search.

this dispute at the conference.[21]  On September 15, 2006, the court lifted the stay and

issued a scheduling order.  Defendants filed a motion to dismiss on October 6, 2006.  On

October 30, 2006, the court granted leave for the plaintiffs to file the first amended

complaint, which they filed on November 24, 2006.  On December 7, 2006, the court

permitted the plaintiffs to file a second amended complaint.  On December 29, 2006,

defendants filed an amended motion to dismiss.  Plaintiffs replied on January 22, 2007.

## II.  STANDARD FOR A MOTION TO DISMISS

The purpose of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of

Civil Procedure is to test the legal sufficiency of a complaint.  Sturm v. Clark, 835 F.2d

1009, 1011 (3d Cir. 1987).   The court may grant a motion to dismiss only where "it

appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of

his claim that would entitle him to relief."  Carino v. Stefan, 376 F.3d 156, 159 (3d Cir.

2004) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  The court must construe

the complaint liberally, accept all factual allegations in the complaint as true, and draw all

reasonable inferences in favor of the plaintiff.  Id.  See also D.P. Enters. v.  Bucks County

Cmty. Coll., 725 F.2d 943, 944 (3d Cir. 1984).  A plaintiff, however, must plead specific

---

[21] On September 13, 2006, Judge Rueter ordered that "Defendants shall provide those plaintiffs so agreeing an opportunity to review the documents seized from their cells relevant to this civil action. The defendants shall arrange for plaintiffs to review the documents in accordance with this Order by October 13, 2006. Plaintiffs may retain those documents not determined by prison officials to be contraband.  After reviewing the documents, each plaintiff shall compile a list of documents he contends were seized from his cell but are missing from the documents produced by defendants. Plaintiffs shall compile and mail their lists of missing documents to John  O.J. Shellenberger, Chief Deputy Attorney General... by November 13, 2006.  Defendants shall respond in writing to each plaintiff regarding the status of the alleged missing documents by December 13, 2006." (Doc. No. 61).

factual allegations.  Neither "bald assertions" nor "vague and conclusory allegations" are accepted as true.  See Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997); Sterling v. Southeastern Pa. Transp. Auth., 897 F. Supp. 893 (E.D. Pa. 1995). When a plaintiff proceeds *pro se*, a court is required to construe the complaint liberally and hold it to a less stringent standard because it is not drafted by an attorney.  Lindsay v. Dunleavy, 177 F. Supp. 2d 398, 401 (E.D. Pa. 2001) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976), Haines v. Kerner, 404 U.S. 519, 521 (1972)).

The court has an additional duty under several federal statutes to review civil complaints filed by prisoners against a government entity and dismiss any portion of the complaint that fails to state a claim upon which relief may be granted or that seeks monetary relief from a defendant who can assert immunity.  See 28 U.S.C. §§ 1915(e)(2) and 1915A; 42 U.S.C. § 1997e(c).

To rule on a motion to dismiss, a court can only consider "allegations in the complaint, exhibits attached to the complaint, matters of public record and documents that form the basis of the claim." Lum v. Bank of Am., 361 F.3d 217, 222 (3d Cir. 2004). Rule 12(b) provides that on a motion to dismiss, if "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."  The Third Circuit has specifically determined that "reliance on declarations from prison

officials or administrators requires conversion." <u>Camp v. Brennan</u>, 219 F.3d 279, 280 (3d Cir. 2000).  However, a court can consider exhibits to the complaint, documents upon which the complaint is based, documents of record filed in the case, and public records in a motion to dismiss.  <u>Southern Cross Oversees Agencies, Inc. v. Wah Kwong Shipping Group Ltd.</u>, 181 F.3d 410, 426-27 (3d Cir. 1999); <u>Pension Benefit Guar. Corp. v. White Consol. Indus. Inc.</u>, 998 F.2d 1192, 1196-97 (3d Cir. 1993).

Defendants have presented materials outside of the pleadings and acknowledged that these documents, if considered by the court, would convert the motion to dismiss into one for summary judgment.  The court has not relied on these documents in ruling on the motion to dismiss and therefore does not need to convert this motion.  Defendants' motion will therefore be judged under the Rule 12(b)(6) standard.

## III.   DISCUSSION

Imprisonment does not deprive inmates of constitutional protections "[b]ut at the same time the Constitution sometimes permits greater restriction of such rights in a prison than it would allow elsewhere."  <u>Beard v. Banks</u>, 126 S.Ct. 2572, 2577-78 (U.S. 2006); <u>see</u> <u>also</u> <u>Overton v. Bazzetta</u>, 539 U.S. 126, 131 (2003) ("Many of the liberties and privileges enjoyed by other citizens must be surrendered by the prisoner."); <u>Shaw v. Murphy</u>, 532 U.S. 223, 228-29 (2001) ("...the constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large."); <u>Bell v. Wolfish</u>, 441 U.S. 520, 545-48 (1979) ("...simply because prison inmates

retain certain constitutional rights does not mean that these rights are not subject to restrictions and limitations....The fact of confinement as well as the legitimate goals and policies of the penal institution limits these retained constitutional rights.").  Plaintiffs' constitutional rights are limited in light of their convictions and incarceration at a state correctional facility.

Section 1983[22] provides a remedy when a constitutionally protected right has been violated under the color of state law.  Oklahoma City v. Tuttle, 471 U.S. 808, 816 (1985).  In order to succeed on a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate: (1) the violation of a right secured by the Constitution, and (2) that the constitutional deprivation was committed by a person acting under the color of state law.[23]  West v. Atkins, 487 U.S. 42, 48 (1988).

**A.     Plaintiffs were not deprived of their Eighth or Fourth Amendment rights during the search of their cells on August 4, 2005.**

During the search of their cells, prison officers strip searched plaintiffs in their cells, ordered them to dress, handcuffed them and made them stand outside the cells while

---

[22] Section 1983 provides in pertinent part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia subjects, or causes to be subjected, any citizen of the United States or other person . . . to the deprivation of any rights, privileges or immunities secured by the Constitution and law, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."  42 U.S.C. § 1983.

[23] Although plaintiffs' do not frame their complaint in terms of Section 1983, the court will construe their complaint as doing so.  While defendants concede that they are state actors, they argue that plaintiffs have not been deprived of their constitutional rights.

the officers searched inside.  Plaintiff Collins states than an officer inserted a finger in his rectum during the search.  These allegations do not violate the Eighth Amendment's prohibition against cruel and unusual punishment.

The Eighth Amendment forbids the unnecessary and wanton infliction of pain that is without penological justification.  Hope v. Pelzer, 536 U.S. 730, 737-738 (2002) (citing Rhodes v. Chapman, 452 U.S. 337, 346 (1981)).  Plaintiffs' pleadings do not establish that they were subjected to unnecessary pain during the August 4, 2005 search of their cells.[24]  The methods used by SCI-Graterford to conduct the search fall into well-established parameters.  The Eighth Amendment excludes *de minimus* uses of physical force.  Hudson v. McMillian, 503 U.S. 1, 9 (1992) (not "every malevolent touch by a prison guard gives rise to a federal cause of action.").  The type of search conducted here–handcuffing a prisoner, removing him from his cell, and strip-searching him–is a *de minimus* intrusion that does not violate the Eighth Amendment.  Ostrander v. Horn, 145 F. Supp.2d 614, 618-19 (M.D. Pa. 2001) *aff'd* 49 Fed. Appx. 391 (3d Cir. 2002); see also Hill v. Blum, 916 F. Supp. 470, 473 (E.D. Pa. 1996) (pat search of the genital area does not implicate the Eighth Amendment).

Plaintiffs cannot claim any violation of their Fourth Amendment rights.  The

---

[24] Because plaintiffs cannot show that they were subjected to unnecessary pain, the court does not have to proceed with the second step of the Eighth Amendment analysis: whether prison officials acted with deliberate indifference to the plaintiffs' health or safety.  Hope, 536 U.S. at 738 (quoting Hudson v. McMillian, 503 U.S. 1, 8 (1992)).

-19-

Supreme Court has determined that a prisoner does not have a legitimate expectation of privacy in his cell and therefore "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell. The recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions." Hudson v. Palmer, 468 U.S. 517, 526 (1984).  Searches of inmates and their cells are necessary to ensure the security of the prison and the safety of all inmates. Id. at 529.  Accordingly, the Fourth Amendment does not protect an inmate from seizures of his property.  Id. at 528-29.  Nor does it protect inmates from visual cavity searches.  Bell v. Wolfish, 441 U.S. 520, 558 (1979) (affirming the use of post-visitation body cavity searches that required male inmates to lift their genitals and bend over and spread their buttocks for visual inspection).

> **B.    Plaintiffs do not state a claim under their constitutional right to access the courts.**

Prisoners have a constitutional right of access to the courts.  Bieregu v. Reno, 59 F.3d 1445, 1453 (3d Cir. 1995) (*citing* Bounds v. Smith, 430 U.S. 817, 821 (1977)).  The source of this right is generally considered to be the First Amendment right to petition clause and the guarantee of due process in the 5th and 14th Amendments.[25]  Id. at 1453-

---

[25] In Bieregu, the 5th Amendment due process clause applied since defendants were federal officials.  In this case, the right would derive from the 14th Amendment, since plaintiffs challenge the policies of a state prison.

54.[26]

Soon after the Third Circuit's decision in Bieregu, the Supreme Court added an actual injury requirement to right to access cases. Lewis v. Casey, 518 U.S. 343, 351-52 (1996); Oliver v. Fauver, 118 F.3d 175 (3d Cir. 1997). The Court held that to pursue a claim of denial of access to the courts an inmate must allege actual injury–that the prison's action hindered his efforts to pursue a non-frivolous legal claim." Lewis v. Casey, 518 U.S. 343, 351 (1996); Jones v. Brown, 461 F.3d 353, 359 n. 6 (3d Cir. 2006) (affirming the actual injury requirement for access to court claims).

The Court has recently clarified that a complaint alleging an access to court claim must plead the merits of the underlying claim that the plaintiff has been denied access to with specificity in order to survive a Rule 12(b)(6) motion to dismiss. Christopher v. Harbury, 536 U.S. 403, 415-17 (2002). In Christopher, the Court identified two types of denial of access to claims: (1) a "forward-looking" category where plaintiffs challenge an official action, such as failure to maintain a law library, that impedes future litigation and (2) a "backward-looking" category alleging that specific litigation ended poorly or could not begin at all because of official action. Id. at 413-414. Regardless of "[w]hether an access claim turns on a litigating opportunity yet to be gained or an opportunity already lost," the same analysis applies. Id. at 414. The plaintiff must allege "the underlying

---

[26] The pedigree of the right of access to the courts is unclear. See Christopher v. Harbury, 536 U.S. 403, 415 n. 12 (2002) (noting that the right has been grounded in the Article IV Privileges and Immunities Clause; the First Amendment Petition Clause; the Fifth Amendment Due Process Clause; as well as the Fourteenth Amendment Equal Protection and Due Process Clauses).

cause of action and its lost remedy" in the complaint in order to give fair notice to the

defendant.  Id. at 416.  The reason for requiring this specificity is that the "lost" action

underlying an access to court claim will not itself be litigated and therefore, plaintiffs will

be tempted to allege too much injury.  Id.  To prevent this tendency, the plaintiff must

describe the predicate claim sufficiently so that the court can apply the nonfrivolous test

in order to determine whether "the nature of the underlying claim is more than hope."  Id.

Moreover, the Supreme Court has also limited the claims for which plaintiffs have

a right of access to the court to two types: (1) attacks on the plaintiff's convictions or (2)

civil rights violations.  Lewis, 518 U.S. at 354.  The Court has expressly stated that the

right of access to courts "does not guarantee inmates the wherewithal to transform

themselves into litigating engines capable of filing everything from shareholder derivative

actions to slip-and-fall claims....Impairment of any other litigating capacity is simply one

of the incidental (and perfectly constitutional) consequences of conviction and

incarceration."  Id. at 355.  At least one district court has ruled that the right of access to

courts does not include access to the Uniform Commercial Code.  Wilson v. Andison, No.

06-10794, 2006 U.S. Dist. LEXIS, at *4 (E.D. Mich. Apr. 17, 2006) (ruling that

"[b]ecause the [seized] materials were intended to help Plaintiff with commercial matters

and not to challenge his conviction or to assert a violation of constitutional rights,

Plaintiff's right of access to the courts was not violated.").

Plaintiffs are unable to meet this heightened pleading standard.  In fact, none of the

plaintiffs even come close to pleading the merits of their "lost" claims.  The Court's

decision in <u>Lewis</u> prevents plaintiffs from alleging a violation of their constitutional right

to access the court in order to pursue commercial activities or copyright their names.

While some of the material seized from the plaintiffs is legal and relates to habeas

petitions or civil rights suits, plaintiffs must do more than state that they needed the

material for court.  In order to state a claim, they must identify (1) a nonfrivolous

underlying cause of action that they were unable to file  and (2) plead that the claim

would provide a remedy that could not otherwise be obtained.  <u>Romansky v. Stickman</u>,

147 Fed. Appx. 310 (3d Cir. 2005) (per curiam) (quoting <u>Christopher</u>, 526 U.S. at 415);

<u>see</u> <u>also</u> <u>Gibson v. Superintendent of N.J. Dep't of Law & Pub. Safety</u>, 411 F.3d 427,

444-445 (3d Cir. 2005) *cert. denied* 126 S. Ct. 1571 (2006); <u>Piskanin v. Hammer</u>, No. 04-

1321, 2005 U.S. Dist. Lexis 28135, at *38 (E.D. Pa. Nov. 14, 2005).

Courts in the Third Circuit have applied this heightened pleading standard to

filings by *pro se* plaintiffs to grant and affirm dismissals under Rule 12(b)(6).  In

<u>Romansky</u>, a *pro se* prisoner was unable to file a habeas petition in District Court because

he did not submit enough copies.  147 Fed. Appx. at 311.  The prisoner requested that the

prison assist him in filing his petition but the prison refused because he did not qualify for

its policy for indigent inmates.  <u>Id</u>.  The Third Circuit affirmed the district court's

dismissal of the prisoner's right to access the courts claim because the plaintiff did not

sufficiently describe the underlying claim so that the court could determine whether it was

nonfrivolous and "more than hope." Id. at 312 (quoting Christopher, 536 U.S. at 416).

A federal district court in the Eastern District also granted a motion to dismiss a pro se plaintiff's access to the court claim on similar grounds. Piskanin, 2005 U.S. Dist. LEXIS 28135.  In that case, the plaintiff claimed that a guard had seized a writ of habeas corpus when placing the plaintiff on suicide watch following his arrest and that this petition was never returned to him. Id. at *4-5.  The court dismissed plaintiff's access to court claim because the complaint only stated that the guard had seized the writ of habeas corpus and did not describe the basis of that petition so the court could determine whether it was nonfrivolous or whether plaintiff was able to assert the basis for that petition in any other action. Id. at *38-39.

Romansky and Piskanin stand for the proposition that simply asserting the loss of a legal claim is insufficient to survive a Rule 12(b)(6) motion.  Instead, a plaintiff, even one proceeding pro se, must plead the "lost" claim with specificity so that the court can determine whether the defendant's actions deprived the plaintiff of a nonfrivolous legal claim.  Plaintiffs fail to plead their access to courts claim with specificity and only aver generally that the prison seized necessary legal materials from his cell.  With the exception of Davis, Collins, Everett, and Poulson, the remaining plaintiffs do not describe what legal action or actions they were pursuing, what claims they were making, and how the seizure of this material injured their claims.

Davis describes a specific legal action he was preparing, a "Motion to Vacate Void

Judgment" for Philadelphia County to attack his conviction in the Philadelphia Court of Common Pleas by raising "the issue of lack of subject matter jurisdiction; that the charging instruments failed to describe the proper defendant in the court records, the court failed to disclose the true nature and cause of the action brought against."  Davis plead guilty in 1990 and would therefore, have been required under Pennsylvania law to file a post-conviction relief petition by January 16, 19997.  Defs' Am. Mot. Dismiss p. 15. Even if Davis' petition was not fifteen years too late, the claims Davis planned to assert were frivolous bases for attacking his guilty plea.

Collins cites various legal proceedings without identifying the nature of the proceedings or the claims.  Identifying the proceedings is insufficient to sustain an access to courts claim.  Further, the appendix defendants have compiled of the public records from these proceedings show that the majority of courts dismissed these claims as frivolous or closed the cases for other reasons; or the claims were filed long after the search and seizure of August 2005; or the claims do not challenge his conviction or challenges to his imprisonment.

Everett and Poulson also identify specific legal proceedings they was pursuing with materials seized in the search of his cell.  However, this does not suffice because they did not plead any facts showing these claims were nonfrivolous and that they have been injured by the seizure of this material.

As none of the plaintiffs meet the heightened pleading standard for an access to

courts claim, I will dismiss their access to courts claim.

**C.   Since plaintiffs allege that defendants did not follow the grievance procedure, their procedural due process claim survives the motion to dismiss.**

Prisoners do not have a constitutionally protected right that prevents the prison from searching their prison cells.  See Section III.A *supra*.  Plaintiffs do have limited rights under the Fourteenth Amendment not to be deprived of property without due process of the law.  However, the Supreme Court has found that a prison's interest in maintaining security justifies limiting due process rights, holding that even "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available."  Hudson, 468 U.S. at 533.  There is no due process right to be heard prior to the initial deprivation of the property as long as an opportunity to be heard is later granted "at a meaningful time and in a meaningful manner."  Parratt v. Taylor, 451 U.S. 527, 540-541 (1981) (finding that an inmate had no due process right to pre-deprivation notice).  This is particularly true when a prison must act quickly to preserve security and thwart inmates from disposing of contraband.  Hudson, 468 U.S. at 529; Tillman v. Lebanon County Corr. Facility, 221 F.3d 410, 421 (3d Cir. 2000).  The Third Circuit has established that "the

Pennsylvania Department of Corrections' grievance procedure[27] provides an adequate post-deprivation remedy." Durham v. Dep't of Corr., 173 Fed. Appx. 154, 157 (3d Cir. 2006) (*citing* Tillman v. Lebanon County Corr. Facility, 221 F.3d 410, 422 (3d Cir. 2000)).

Hudson and Durham would foreclose the plaintiffs' procedural due process claims, except for the fact that plaintiffs[28] allege that the prison did not follow its internal grievance procedure.  Therefore, I will not dismiss plaintiffs' procedural due process claims.[29]

### D.   Plaintiffs' First Amendment claim is best evaluated under the fact-intensive Turner test.

Throughout their complaint and pleadings, plaintiffs attack defendants' rationale for authorizing the August 4, 2005 search.  According to the plaintiffs, defendants lacked a penological interest in the confiscation because there was no evidence that any of the plaintiffs had filed or intended to file liens.  Second Am. Compl. ¶ 20.  Plaintiffs also

---

[27] Many of the plaintiffs have included grievance forms in their filings and defendants have submitted a copy of the grievance procedure, Department of Corrections Administrative Directive ("DC-ADM") 804, with their initial motion to dismiss filed on October 6, 2006.  (Doc. No. 76 Ex. 1).  DC-ADM 804 permits inmates to file grievances in writing and a staff person with knowledge of the situation must respond.  The inmate can appeal to the superintendent if he is dissatisfied with the response.  If the inmate is dissatisfied with the superintendent's response, he can appeal to a central office of inmate grievance appeals.  DC-ADM 904 prohibits the disposal of personal property and publications that is the subject of the grievance while the grievance and any appeals are pending.

[28] Defendants note that Royster received responses to all his grievance submissions up to his final appeal because he attached them to his Affidavit.  (Document No. 90).  Therefore, they suggest, he cannot pursue a procedural due process claim.

[29] Defendants argue that their actions beyond the grievance procedure provided procedural due process.  In support of this argument, defendants submit two declarations from defendant Moyer that he offered to return seized material to the plaintiffs on two occasions and that most refused the offer.  Since the court cannot consider this material on a motion to dismiss, plaintiffs' claim survives.

assert that they had a right to possess and utilize the UCC and commercial law materials.
Id. ¶ 30.

Any allegations that the prison deprived plaintiffs of a property interest are addressed by the Fourteenth Amendment right to procedural due process.  See Section III. C. *supra*.  Although defendants suggest that this claim should be addressed under the Fourteenth Amendment's guarantee of substantive due process, the Supreme Court has been reluctant to expand the Fourteenth Amendment's substantive due process guarantee beyond "matters relating to marriage, family, procreation, and the right to bodily integrity."  Albright v. Oliver, 510 U.S. 266, 271-72 (1994).  In Albright, the Court expressly held that a petitioner could not challenge his criminal prosecution by claiming a liberty interest under the due process clause to be free from criminal prosecution because the Framers of the Constitution drafted the Fourth Amendment to address pretrial deprivations of liberty.  Id. at 274.  The Court noted that "[w]here a particular Amendment "provides an explicit textual source of constitutional protection" against a particular sort of government behavior, "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." Id. at 273 (quoting Graham v. Connor, 490 U.S. 386, 395(1989)).

The First Amendment, and not substantive due process, is the most appropriate constitutional guarantee to use in evaluating plaintiffs' claim that they had a right to possess and use commercial law material and that defendants' interference with this right

is irrational.  Courts usually evaluate claims of access to publications under the First

Amendment.  See Beard v. Bank, 126 S.Ct. 2572 (2006) (prohibiting access to

newspapers, magazines and family photographs to the "worst of the worst" inmates to

create an incentive towards better behavior does not violate the First Amendment); Jones

v. Brown, 461 F.3d 353 (3d Cir. 2006) (prisoners have a First Amendment right to be

present when incoming legal mail is opened because claims that the prison needed to

open these materials elsewhere to prevent and contain the risk of anthrax was too

speculative); Prison Legal News v. Lehman, 397 F.3d 692 (9th Cir. 2005) (regulations

prohibiting inmates from receiving bulk and third and fourth class mail because this

would create fire hazards were not rationally related to penological interest); Ramirez v

Pugh, 379 F.3d 122 (3d Cir. 2004) (district court cannot decide the validity of a prison

policy prohibiting prisoners from receiving pornographic materials on a motion to dismiss

because the Turner test is fact-specific); Shakur v. Selsky, 391 F.3d 106 (2nd Cir. 2004)

(prisons' policy of excluding all literature from outside organizations unless approved by

the prisons was too broad).

　　　　To analyze plaintiffs' claim, the court must apply the test developed by the

Supreme Court in Turner v. Safley, 482 U.S. 78 (1987) to determine "whether a prison

regulation is reasonably related to legitimate penological interest."  Beard, 126 S.Ct. at

2578 (citation omitted).  This test allows courts to strike the "appropriate balance between

prisoners' exercise of their constitutional rights and the institutional needs of prison

administrators." Ramirez, 379 F.3d at 126.  The Third Circuit instructs courts to conduct

a two-step Turner analysis:

> First, there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it.  Thus, a regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational or to demonstrate that it represents an exaggerated response to the asserted objectives.  [Second] If such a rational relationship is found to exist, that determination commences rather than concludes our inquiry.  The other three Turner factors to be considered are (1) whether inmates retain alternative means of exercising the circumscribed right, (2) the burden on prison resources that would be imposed by accommodating the right, and (3) whether there are alternatives to the regulation that fully accommodate the prisoners' rights at de minimis cost to valid penological interests." Jones, 461 F.3d  at 360 (citations omitted).

Challengers of the regulation have the ultimate burden of persuasion that the policy is

unreasonable and fails step one of the Turner analysis.  Id.  The defenders of the policy

must provide a government interest that justifies the regulation and "demonstrate that the

policy drafters could rationally have seen a connection between the policy and that

interest." Id.  The Turner test is fact-intensive and the Third Circuit has held that it

requires "a contextual, record-sensitive analysis." Ramirez, 379 F.3d at 128, 130 (finding

the district court erred for deciding a Turner analysis on a motion to dismiss).

   The court cannot apply the fact-intensive Turner test on a motion to dismiss, when

only the plaintiffs' complaint and public records can be utilized.  The court will need to

look beyond this record to determine whether there is a valid, rational connection between

the prison regulation prohibiting access to UCC materials and the prison's asserted

interest.  Plaintiffs' First Amendment claim survives the motion to dismiss.

E.     **Defendants' actions do not violate any rights plaintiffs have under the Commerce Clause or the federal constitutional separation of powers doctrine.**

Plaintiffs allege that the defendants' search and seizure of their property on August 4, 2005 violates their rights under the Commerce Clause and the separation of powers doctrine.  Second Am. Compl. ¶¶ 32, 33, 37.  No court has ever found that these federal constitutional rights can be exercised by individuals.  As these allegations are clearly frivolous, the court will dismiss them.  Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003) (a frivolous suit is one that is indisputably based on a meritless legal theory).

F.     **Compensatory Damages**

Since plaintiffs do not allege any physical injuries, they are barred from collecting compensatory damages under 42 U.S.C. § 1997e(e),[30] as interpreted by the Third Circuit, and can only collect nominal or punitive damages.  Allah v. Al-Hafeez, 226 F.3d 247 (3d Cir. 2000); Mitchell v. Horn, 318 F.3d 523, 534, 536 (3d Cir. 2003) (finding that Section 1997e(e) requires more than a *de minimus* physical injury to support a claim for compensatory damages).

IV.    **CONCLUSION**

For the reason discussed above, I will grant defendants' motion to dismiss as to all the claims except the Fourteenth Amendment procedural due process and First

---

[30] This statute states that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).

Amendment claims.  An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **EDWARD MONROE, et al.,** | : | **CIVIL ACTION** |
| **Plaintiffs,** | : | **NO. 05-04937** |
| | : | |
| **v.** | : | |
| | : | |
| **JEFFREY A. BEARD, et al.,** | : | |
| **Defendants.** | : | |

## ORDER

**AND NOW**, this 7th day of March, 2007, upon consideration of defendants

motions to dismiss (Document Nos. 76, 112, and 188) and plaintiffs' responses thereto, it

is hereby **ORDERED** that defendants' motion is **GRANTED** as to all claims except

Fourteenth Amendment Due Process and First Amendment claims.

It is **FURTHER ORDERED** that the parties have until April 9, 2007 to conduct

additional discovery.  Dispositive motions should be filed by April 23, 2007 and

responses are due by May 7, 2007.

BY THE COURT:


 /s/ Lawrence F. Stengel
LAWRENCE F. STENGEL, J.
